```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA DRAKE                      :       CIVIL ACTION
                                 :
                                 :
        v.                       :
                                 :
JO ANNE B. BARNHART,             :       NO. 04-6084
Commissioner of Social           :
Security                         :
```

**MEMORANDUM**

**Padova, J.**                                      **November 15, 2005**

**I.   BACKGROUND**

Plaintiff S.C.,[1] by and through her mother, Linda Drake, filed this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Defendant Commissioner of Social Security ("Commissioner") denying her claim for child's supplemental security income ("CSSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383 (2000).  Both parties filed motions for summary judgment.  Pursuant to Local Rule 72.1(d)(1)(C), the Court referred the case to Magistrate Judge Timothy R. Rice for a Report and Recommendation.  The Magistrate recommended granting Defendant's Motion for Summary Judgment.  The Plaintiff filed timely objections.  For the reasons that follow, the Court concludes that the ALJ's decision was supported by substantial evidence.  Accordingly, the Court overrules Plaintiff's objections and adopts the Magistrate's Report and Recommendation.

---

[1]The child's name has been abbreviated in accordance with Local Rule of Civil Procedure 5.1.3 governing the exclusion of the personal identifiers of minor children in civil case documents.

Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

## II. LEGAL STANDARD

A district court judge makes a de novo determination of those portions of a magistrate judge's report and recommendation to which objection is made.  28 U.S.C. § 636(b)(1)(C).  The judge may accept, reject or modify, in whole or in part, the magistrate judge's findings or recommendations. Id.

Under the Social Security Act, a child under the age of 18 is considered disabled for the purpose of receiving CSSI if that child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  A physical or mental impairment is defined by the statute as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).  A three-step sequential evaluation process promulgated by the Department of Health and Human Services is used to determine whether a child under the age of 18 is eligible for benefits.  The ALJ considers, in the following sequence: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has

a severe impairment or combination of impairments; and (3) whether the impairment, or combination of impairments, meets, medically equals, or functionally equals in severity any of the listed impairments.  20 C.F.R. § 416.924.  An impairment functionally equals in severity a listed impairment if it results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning.  20 C.F.R. § 416.926a(d).  The domains assessed are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Judicial review of the Commissioner's final decision is limited, and the Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989); Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).  "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence is more than a mere scintilla, but may be

somewhat less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).

Despite the deference to administrative decisions implied by this standard, this Court retains the responsibility to scrutinize the entire record and to reverse or remand if the Commissioner's decision is not supported by substantial evidence. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence can only be considered as supporting evidence in relationship to all other evidence in the record. Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

**III. DISCUSSION**

A. Factual and Procedural History

Plaintiff was born on October 25, 1992, and claims disability due to deafness in her left ear and learning disabilities. Plaintiff's difficulties became evident during the 2001-2002 school year. Plaintiff was in the third grade and according to her teacher, "struggling with the reading process." (R. at 133.) A certified school psychologist reported that S.C. was performing one to two years below her grade level. (R. at 143.) Dr. Jeffrey Finkelstein, an ear, nose, and throat specialist, evaluated Plaintiff in June 2002 and diagnosed her with a moderately severe to severe sensori-neural hearing loss in the left ear with poor speech discrimination. (R. at 153-54.) He recommended that she receive preferential seating in school in order to place her close

to the teacher so that she could better understand what the teacher was saying.  (Id.)  By the fourth grade, S.C.'s school was providing her with special attention for her reading, writing, and study skills in bi-weekly small group settings.  (R. at 127.)  Her teachers strongly suggested that S.C. take remedial reading, spelling, and math classes over the summer.  (R. at 123.)  In the fifth grade, S.C. received special education services for thirty minutes a week, and undertook a modified spelling and English curriculum that included being given practice tests in advance of actual tests and being tested on less material than her classmates.  (R. at 30-31, 117.)  Dr. Finkelstein reexamined S.C.'s hearing in her left ear in the summer of 2004 and noted that it had decreased since 2002.  (R. at 170.)  S.C. also saw an allergist, Dr. Warden Hwan, that summer because she was suffering from chronic cough, asthma, and allergic rhinitis.  (R. at 171-76.)  Dr. Hwan reported that, once S.C. was on medication, her symptoms were well controlled.  (Id.)

Dr. William O'Connell, Plaintiff's treating pediatrician, completed a Child Disability Medical Source Statement on July 30, 2003.  (R. at 155-59.)  He determined that Plaintiff had two marked limitations, which would make her disabled for the purpose of eligibility for CSSI benefits.  (Id.)  He found a marked limitation in Plaintiff's ability to acquire and use information based upon her difficulties comprehending what she was reading and handling new

5

information, and found a marked limitation in Plaintiff's ability to attend and complete tasks based upon her "extremely poor achievement" for her tested intellectual level. (Id.) Dr. O'Connell concluded that Plaintiff had less than marked limitations in the remaining four functional domains.

Plaintiff's mother filed an application for CSSI on S.C.'s behalf on September 23, 2003.[2] A Childhood Disability Evaluation Form was prepared by Dr. John Grutkowski, a non-examining state agency psychologist, on December 22, 2003. (R. at 162-67.) Dr. Grutkowski assessed Plaintiff's impairment as severe, but not meeting, medically equaling, or functionally equaling any listed impairment. (R. at 162.) His evaluation stated that Plaintiff's health and well-being, ability to acquire and use information, ability to attend and complete tasks, and ability to interact and relate with others all had less than marked limitations, while Plaintiff suffered no limitation in her ability to move and manipulate objects and care for herself. (R. at 164-66.) Plaintiff's application for supplemental security income was denied

---

[2]This application for CSSI is the second filed on behalf of Plaintiff. Plaintiff's mother filed the first application on July 15, 2002. Plaintiff's claim was denied and Plaintiff's mother filed a request for a hearing. The ALJ held a hearing on March 24, 2003, and issued his opinion on April 7, 2003, finding that Plaintiff was not disabled under the Social Security Act. Plaintiff filed a Request for Review with the Appeals Council, which the Council determined baseless on July 10, 2003. Plaintiff did not seek judicial review.

on January 28, 2004 and Plaintiff requested an administrative hearing.

Administrative Law Judge Daniel L. Rubini conducted the hearing on September 14, 2004. He issued his decision on November 5, 2004, concluding that Plaintiff was ineligible to receive CSSI. The ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset of her disability and that her hearing loss constituted a "severe impairment."[3] (R. at 18.) The ALJ determined, however, that Plaintiff's hearing impairment did not meet or medically equal the severity of any listed impairment. He also found that her hearing impairment did not functionally equal the severity of the listings since she had less than marked limitations in her ability to acquire and use information and in her health and physical well-being and she had no limitation in the other four functional domains. (Id.) The ALJ noted that he gave Dr. O'Connell's assessment to the contrary limited weight. The ALJ recognized that Dr. O'Connell reported that Plaintiff had marked limitations; however, he found that the evidence of record as a whole did not establish cognitive dysfunction or problems completing tasks at school, provided Plaintiff was allowed a seating

---

[3] In contrast to his April 2003 decision on Plaintiff's first application for CSSI, ALJ Rubini did not count Plaintiff's learning disability as a severe impairment. Plaintiff concedes that the ALJ was entitled to make different findings upon two different disability applications, but argues that the discrepancy suggests the ALJ was inattentive. The Court notes that the ALJ has been consistent in his ultimate conclusion that S.C. is not disabled.

accommodation in her classroom and the occasional repetition of instructions. The ALJ found that Plaintiff's subjective complaints as described in the hearing testimony were likewise only credible to the extent they were supported by the evidence of record. Accordingly, the ALJ decided that Plaintiff was not under a "disability" at any time from the alleged onset through the date of the decision. (Id.)

The Magistrate concluded that there was substantial evidence to support the ALJ's decision that though S.C.'s hearing loss constituted a severe impairment, she was not disabled under the Social Security Act because her functional limitations were less than marked. Plaintiff objects to the Magistrate's Report and Recommendation. Plaintiff argues that the ALJ's decision is marred by three reversible errors: (1) the ALJ rejected the opinion of Plaintiff's treating physician, Dr. O'Connell, that S.C. suffered from two marked limitations without good reason; (2) the ALJ inadequately explained his rejection of Plaintiff's and her mother's hearing testimony; and (3) the ALJ failed to obtain a comprehensive medical evaluation of Plaintiff's case as required by statute.

B. The ALJ's Rejection of Dr. O'Connell's Opinion

Plaintiff argues that the ALJ should have credited Dr. O'Connell's opinion that she had marked limitations in both her ability to acquire and use information and her ability to attend and complete tasks, thereby compelling a finding that she was disabled.

Plaintiff contends that, when the ALJ decided that Dr. O'Connell's assessment was not supported by the evidence, the ALJ engaged in selective evaluation of the evidence and ignored the portions of the record that indicated the severity of S.C.'s problem.  Plaintiff maintains that the ALJ should have analyzed S.C.'s academic performance apart from the accommodations she receives, arguing that only in the "context of lowered academic demands" is her performance "ostensibly satisfactory."  (Pl. Obj. at 3.)  Although Plaintiff finds fault with the way the ALJ weighed the evidence, if the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, regardless of whether the Court might have decided differently on first impression.  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

Congress intended that "only needy children with severe disabilities be eligible for [C]SSI."  H.R. Conf. Rep. No. 104-725, at 328 (1996), reprinted in 1996 U.S.C.C.A.N. 2649, 2716.  The fact that a child requires accommodations at school does not mean he or she has "marked" limitations under the Social Security Act.  An impairment will not result in a "marked" limitation unless it "interferes seriously" with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  That equates with the functioning expected of a child with standardized testing scores that are at least two, but

9

less than three, standard deviations below the mean.  20 C.F.R. § 416.926a(e)(2)(iii).  The ALJ may consider how accommodations made on a child's behalf limit the adverse effects of her impairment. See, e.g., Calderon ex. rel. Vorbau v. Apfel, 2001 WL 43642, at *4 (E.D. Pa. Jan. 4, 2001) (finding ALJ does not have to evaluate child's ability to function absent accommodations provided in learning support program).  An ALJ is entitled to reject a treating physician's conclusion about the nature of a child's impairment if the conclusion lacks foundation in clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985), or if it conflicts with other medical evidence, Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), so long as the ALJ "explains why certain evidence has been accepted and why other evidence has been rejected." Kent, 710 F.2d at 115 n.5.

The ALJ reviewed Dr. O'Connell's statement, which was unaccompanied by diagnostic testing, and balanced it against standardized test scores that indicate Plaintiff's intellectual functioning is in range of average, Plaintiff's grade reports, and Plaintiff's involvement in extracurricular activities. The ALJ also weighed assessments from Plaintiff's fifth grade teacher and her reading specialist, both of whom worked with Plaintiff on a daily or weekly basis.  Both stated that Plaintiff pays attention in class, comprehends instructions, completes homework assignments and, with hard work, keeps up with her classmates. (R. at 106-116.)  The

ALJ additionally considered agency consultant Dr. Grutkowski's opinion that Plaintiff did not have marked limitations in any domains of functioning and the fact that Plaintiff does not require frequent or intensive medical treatment.  The evidence cited by the ALJ as either failing to support or contradicting Dr. O'Connell's opinion is substantial, and the ALJ was, therefore, within his discretion in giving Dr. O'Connell's opinion limited weight.  (R. at 15-16.)  Accordingly, Plaintiff's objection is overruled.

    C. The ALJ's Rejection of Hearing Testimony

Plaintiff contends that the ALJ rejected the hearing testimony of Plaintiff and her mother without adequate explanation.  Plaintiff testified at the hearing that she gets remedial assistance outside of class and receives special treatment in class; for example, she is tested on half the number of spelling words as her classmates.  (R. at 31.)  Her mother testified that Plaintiff has problems understanding and executing instructions. (R. at 36-37.)  Plaintiff contends that this hearing testimony constitutes relevant evidence and the ALJ should have thoroughly addressed it in his decision.

The United States Court of Appeals for the Third Circuit ("Third Circuit") requires the ALJ to set forth the reasons for his decision to facilitate "meaningful judicial review."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000) (citing Cotter, 642 F.2d at 704-05).  The ALJ's explanations must be sufficiently thorough to allow the reviewing court to evaluate

whether the ALJ's decision was based on substantial evidence. Cotter, 642 F.2d at 705. However, the ALJ does not have to undertake an exhaustive discussion of every piece of evidence. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

The ALJ who decided Plaintiff's case identified which portions of the record he considered persuasive and which he did not. Compare Abshire v. Brown, 662 F. Supp. 8, 9 (E.D. Pa. 1986). He also identified those portions of the record that permitted crucial inferences, such as his conclusion that S.C. does not have a cognitive dysfunction warranting a finding of a marked limitation. He accounted for the hearing testimony of Plaintiff and her mother in reaching his conclusion. The ALJ's decision explicitly stated that he found Plaintiff's subjective complaints credible only to the extent that they were supported by the evidence of record as summarized in the text of his decision. The ALJ did not make a specific credibility finding with respect to Plaintiff's mother's testimony, but he "review[ed] all of the evidence of record" and he addressed written comments made by Plaintiff's mother that contain content similar to her hearing testimony. (R. at 12, 101-04.) The ALJ cited statements that Plaintiff gets along well with her classmates and that her classmates know to direct their speech to Plaintiff's good ear as corroborating his decision. (R. at 16.) The ALJ's reasoning was adequate to permit this Court to determine

that his decision was supported by substantial evidence. Plaintiff's objection is overruled on that basis.

D. The ALJ's Failure to Obtain a Medical Evaluation

Plaintiff argues that the ALJ violated 42 U.S.C. § 1382c(a)(3)(I) by failing to obtain a comprehensive medical evaluation of Plaintiff's case as part of the hearing. Section 1382c(a)(3)(I) provides:

> In making any determination under this title . . . with respect to the disability of an individual who has not attained the age of 18 years . . ., the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. § 1382c(a)(3)(I). Plaintiff contends that, even if the ALJ's finding is supported by substantial evidence, § 1382c(a)(3)(I) requires this Court to remand her case for further proceedings.[4]

---

[4] Plaintiff relies on Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006 (9th Cir. 2003). In Howard, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") reversed and remanded the decision of an ALJ who constructed his own case evaluation from medical reports on the record without securing an assessment of the child's case as a whole. Id. at 1014. The Ninth Circuit held that § 1382c(a)(3)(I)'s requirement that the ALJ "make reasonable efforts" to ensure that a qualified individual "evaluates the case" means that the ALJ should "obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist." Id. No other court has cited Howard to require a comprehensive case evaluation at the ALJ hearing level. This Court is not bound by the Ninth Circuit's decision and opts not to follow it.

The Commissioner of Social Security offers a contrary interpretation of § 1382c(a)(3)(I), which she announced in Acquiescence Ruling 04-1(9), 69 Fed. Reg. 22578 (Apr. 26, 2004). Acquiescence Ruling 04-1(9) states that the requirement for review by a pediatrician or other appropriate specialist covers CSSI cases at the initial and reconsideration levels of the administrative review process. Id. at 22580. Section 1382c(a)(3)(I) is satisfied when a state agency doctor evaluates the child's case; there is no requirement of further evaluation at the hearing level. Although Acquiescence Ruling 04-1(9) does not have the force and effect of law, it represents the Social Security Administration's understanding of the Act it administers. Therefore, this Court must follow it, unless it is inconsistent with the Social Security Act or is unreasonable. See Chevron U.S.A. Inc. V. Natural Res. Defense Council, Inc., 467 U.S. 837, 842-44 (1984); Gordon v. Shalala, 55 F.3d 101, 105 (2d Cir. 1995) (citing Walker v. Secretary of Health & Human Services, 943 F.2d 1257, 1259-60 (10th Cir. 1991)).

The Court finds, in accordance with Acquiescence Ruling 04-1(9), that once state agency consultant Dr. Grutkowski completed his assessment, Plaintiff received all that she was entitled to under § 1382c(a)(3)(I).[5] The plain language of § 1382c(a)(3)(I) necessitates

---

[5]This Court's holding does not mean, as Plaintiff contends, that no ALJ will "ever [be] required to obtain medical expert opinion in any case." (Pl. Br. at 18.) The ALJ has an independent obligation to develop the record fully and fairly in deciding applications for CSSI benefits, which may, in certain cases,

an evaluation of each child's case, but nowhere does it mention a hearing-level analysis. Rather the statue simply pertains to "determinations under this title," and in fact the term "determination" as employed by the Social Security Administration's regulations specifically refers to the stages of the claim review process occurring at the state agency level. See 20 C.F.R. §§ 416.903(f), 416. 1015(e), 416.1401. The Commissioner's interpretation of § 1382c(a)(3)(I) thus represents a reasonable construction. As a psychologist, Dr. Grutkowski was qualified to evaluate Plaintiff's functional capabilities in learning, completing tasks, socializing, motor functioning, and performing self care activities. See Perales, 402 U.S. at 403 ("The vast workings of the social security administrative system make for reliability and impartiality in the [agency] consultant reports."); 20 C.F.R. § 416.927(f)(2)(i) ("State agency . . . psychological consultants . . . are highly qualified . . . experts in Social Security disability evaluation."). Dr. Grutkowski based his assessment on a full review of Plaintiff's medical and scholastic records.[6] (R. at 167.) The

---

require securing medical expert opinions. See Rutherford v. Barnhart, 399 F.3d 546, 556-57 (3d Cir. 2005); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 1980).

[6]The only medical information added to the record after Dr. Grutkowski's assessment were Dr. Hwan's report, which concluded that Plaintiff's allergies and asthma were controlled, and Dr. Finkelstein's June 2004 hearing test, which affirmed that Plaintiff's hearing in her left ear was not within normal limits.

Court concludes that his evaluation therefore fulfills the dictates of § 1382c(a)(3)(I), and Plaintiff's objection is overruled on that basis.

**IV.  CONCLUSION**

For the reasons stated above, the Court overrules Plaintiff's objections and adopts the Magistrate Judge's Report and Recommendation.  The Court grants summary judgment in favor of Defendant and denies Plaintiff's motion for summary judgment.  An appropriate order follows.

```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| LINDA DRAKE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | NO. 04-6084 |
| Commissioner of Social | : | |
| Security | : | |

## ORDER

**AND NOW**, this 15th day of November, 2005, upon consideration of the pleadings and record herein, and after review of the Report and Recommendation of United States Magistrate Judge Timothy R. Rice, **IT IS HEREBY ORDERED** that:

1. Plaintiff's objections to the Report and Recommendation (Doc. No. 10) are **OVERRULED**;

2. The Report and Recommendation is **APPROVED** and **ADOPTED** consistent with the accompanying Memorandum;

3. The Plaintiff's Motion for Summary Judgment (Doc. No. 5) is **DENIED**;

4. The Commissioner's Motion for Summary Judgment (Doc. No. 6) is **GRANTED.**

                                        BY THE COURT:


                                        _____
                                        John R. Padova, J.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA DRAKE                     :      CIVIL ACTION
                                :
                                :
          v.                    :
                                :
JO ANNE B. BARNHART,            :      NO. 04-6084
Commissioner of Social          :
Security                        :
```

**JUDGMENT**

**AND NOW**, this 15th day of November, 2005, in accordance with the Court's separate Order dated this same date, granting Defendant's Motion for Summary Judgment, **IT IS HEREBY ORDERED** that **JUDGMENT IS ENTERED** in favor of Defendant, Jo Anne Barnhart, Commissioner of the Social Security Administration, and against Plaintiff, Linda Drake.

BY THE COURT:

_____
John R. Padova, J.